UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

In re: **Helen Maxine Stinnie,**
*Debtor* Chapter 7

Case No: 16-60846

## MEMORANDUM IN SUPPORT OF ORAL ARGUMENT FOR WAIVER OF CREDIT COUNSELING REQUIREMENTS

## SUMMARY OF MATTER AND ARGUMENT

In brief, this memorandum argues that the court has and should apply its discretionary authority to the pertinent circumstances involved here – namely, one of attorney mistake -- to grant an equitable waiver of the credit counseling requirements set out in 11 USCA 109(h)(1).

## BACKGROND AND FACTS

Helen Maxine Stinnie, "Debtor", of Charlottesville submitted an application dated August 31, 2015 to the Richmond office of the Central Virginia Legal Aid Society for assistance in filing a personal bankruptcy. Along with her application Ms. Stinnie submitted a certificate of credit counseling indicating that she had received the mandated counseling August 28, 2015.

Because of the plethora of applicants and lack of available bankruptcy counsel willing to provide pro bono bankruptcy assistance, her application was placed in queue until it was assigned to undersigned counsel February 2016. At that point counsel began preparation of the debtor's bankruptcy petition. Ms. Stinnie signed her petition manually on April 14, 2016 and counsel planned to file the petition directly. Unfortunately, at that time counsel noted that

the debtors credit counseling certificate was too old to conform to the requirements of 11 USCA 109(h)(1).

To correct this problem counsel advised debtor by phone April 27th that a new certificate was required. Debtor stated that she would obtain the certificate as soon as possible.

On April 27, 2016 counsel filed bankruptcy for Ms. Stinnie by filing only the minimally required documents necessary to launch the action: the petition, the mailing matrix and an application to waive the filing fee. Counsel was guided by his understanding that the remaining documents and schedules could be filed within a later time frame. This timing procedure also permitted a subsequent filing of a credit counseling report. Unfortunately, counsel mistakenly overlooked the requirement that the credit counseling itself be received before the date of the filing of the bankruptcy petition even though the filing of the certification itself is permitted to be filed after the filing of the petition. When counsel received the new certificate from the debtor, he filed it on May 3, 2016 without noticing the problem that it was dated April 28, 2016, one day after the 109(h) (1) requirement.

The court responded to Debtor's petition on the day of the filing by noticing a Section 341 Meeting of Creditors for June 3, 2016 and also by issuing approval of the Debtor's application to waive the filing fee. On May 9. 2016 the court issued a deficiency notice regarding the credit counseling certification submission and set a hearing for June 16, 2016. On June 3rd the 341 Creditor's meeting took place and on June 6th the Trustee issued a notice of no distribution.

On June 16, 2016 oral argument was heard by the court from counsel in support of waiver of the credit counseling requirements based upon the circumstances discussed. At conclusion of argument the court granted leave for counsel to formally brief the matter within 14 days.

**The Court has Power to Waive the Credit Counseling Requirements in Circumstances
Involving Attorney Mistake**

The fundamental argument raised by counsel at oral argument had to do with two cases: *In re
Mitrano,* U.S. District Court, E.D. Virginia, Alexandria Division, 409 B.R. 812 2009 and *In
re Fiorillo*, U. S. District Court, District of Massachusetts, 455 B.R. 297, 2011. Both cases
discuss at length and take opposing positions in regard to another case, *In re Hess* (U.S.
Bankruptcy Court D. Vermont, 347 B.R. 489, 2006.

The overarching point counsel attempted to make at that time was to impress upon the court
the particular limitations relating to the Mitrano case. The first limitation of *Mitrano* is that it
does not address whether or not Section 109(h) is jurisdictional. The *Fiorillo* court on the
other hand begins its discussion of the equitable powers of the bankruptcy court by first
addressing the matter of whether the Section 109(h) is jurisdictional.

> There was initially a division among courts regarding whether § 109(h) is jurisdictional, but there
> is now an emerging consensus that it is not. The early decisions finding § 109(h) jurisdictional
> "considered the bankruptcy case a nullity, or at least not a pending case for purposes of 11 U.S.C. §
> 362(c) and (4)." *See In re Crawford*, 420 B.R. 833, 838 (Bankr.D.N.M.2009) (collecting cases). …
> . [13] However, I conclude that § 109(h) is nonjurisdictional. The Second Circuit and the Bankruptcy
> Appellate Panels of two other circuits have recently adopted this approach, and I am persuaded that
> their reasoning is sound. *See Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 169 (2d Cir.2010); *In re
> Amir*, 436 B.R. at 21; *Mendez v. Salven (In re Mendez)*, 367 B.R. 109, 116–18 (9th Cir. BAP 2007);
> *see also In re Mattingly*, 2008 WL 2559378, at *1 (treating § 109(h) as nonjurisdictional); *In re
> Falcone*, 370 B.R. at 467 (adopting the reasoning of *In re Tomco*, 339 B.R. 145
> (Bankr.W.D.Pa.2006), and concluding that § 109(h) is nonjurisdictional).

Whether or not the section is jurisdictional or not is important because, if it is, there is no
discretion at all for the court to exercise. If, in fact, the controlling legal consensus is that
109(h) is not jurisdictional, dismissal for failure to meet its "eligibility" requirements is not
required, but, instead, a matter of discretion. That is, to comprehend the consequence failure
of meeting the 'edibility' requirements of 109(h) as mandating dismissal, is to grasp the statue
as jurisdictional contrary to an overwhelming body of legal opinion.

If one grants that the statute is not jurisdictional, dismissal for failure to meet the requirements of 109(h) becomes a matter of statutory construction or interpretation and in many circumstances one of discretion.

Secondly, while the Mitrano acknowledges the "totality of circumstances" approach of the bankruptcy court in *In re Hess*, it rationalizes at length as a matter of strict statutory construction its reasons for not taking a similar approach. Nonetheless, the Mitrano court acknowledges:

> The bankruptcy court decisions in this district also recognize, *sub silentio,* that there may be some discretion, under extraordinary circumstances, to excuse compliance with the requirements of Section 109(h), such as where compliance is literally impossible. .... There is certainly support for this view, not only under the "manifest injustice" standard articulated by the United States Supreme Court in *Holy Trinity Church,* but also under general principles recognized in this Circuit. *See In re Landbank Equity Corp.,* 973 F.2d 265, 271 (4th Cir.1992) (recognizing that a bankruptcy court's status as a court of equity "does not confer on the court unlimited authority to ignore plain statutory *818 requirements" but that "[t]here do exist equitable doctrines available for use in those extraordinary cases in which manifest injustice would result if established legal principles were to be applied.").[4]

The footnote to the foregoing quotation is particularly instructive.

> This case does not require this Court to decide the broader question whether such equitable doctrines may be invoked in "extraordinary cases" to excuse non-compliance with Section 109(h) under the doctrine of "manifest injustice." The circumstances surrounding Mitrano's failure to comply with Section 109(h) do not make this an "extraordinary case." Mitrano was clearly aware of the credit counseling requirements as he had previously sought and been granted a deferral under Section 109(h). See In re Mitrano, No. 08–12890–SSM, 2008 WL 4533659 (Bankr.E.D.Va. Sept. 25, 2008). It was not impossible for Mitrano to request credit counseling services in the first instance; rather, he made a choice not to seek credit counseling services or file for bankruptcy protection until the day before a foreclosure on his house was scheduled.

A reading of the footnote in conjunction with the *sub silentio* acknowledgement of "some discretion under extraordinary circumstances", makes clear, first that the *Mitrano* court acknowledges the potential existence of the power of the court to determine an equitable waiver of the credit counseling requirement and second that, in actual fact, the court has performed an equitable analysis of the circumstances associated with the debtor in the instant case and determined, *albeit sub silentio*, that the behavior of the debtor involved does not warrant

application of "equitable doctrines." Given that the debtor simply did not timely request credit

counseling when he was aware of the requirement, it would be hard to argue for an equitable

waiver.[1]


**Hess: From Statutory Construction to Totality of the Circumstances Discretion**

The reasoning of the *Hess* court as a matter of statutory construction is important in that it

highlights the difference with strict construction verging on jurisdictional approach laid out in

*Mitrano*.  The essence of the statutory construction argument is the contextual discretion that

emerges when a non-jurisdictional statute section such 109(h) seemingly formulates eligibility

criteria, but fails to expressly state a remedy.  *Hess* states the solution to the statutory

construction problem as follows:

> Since § 109(h) does not expressly articulate the consequences of a debtor's failure to establish the
> criteria for the exigent circumstances exemption, it is appropriate *496 for the Court to consider
> other provisions of the Bankruptcy Code that relate directly to the relief sought, and the
> jurisprudence that has developed under the sections of the code that were not changed by BAPCPA,
> to determine those consequences. *See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235,
> 242–43, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)*. The most pertinent and salient statutory resources
> are other subsections of the eligibility statute, the provision of the Bankruptcy Code that specifically
> addresses dismissal of chapter 7 cases, and other provisions of BAPCPA where Congress explicitly
> circumscribed the courts' discretion.

---

[1] Or as related by Fiorillo in its reasoning cabining Mitrano:  *In re Borges*, 440 B.R. 551, 556
(Bankr.D.N.M.2010).  "[T]hose Courts that have found that there is no discretion to waive, modify or defer the
requirements of Section 109(h) have subscribed to the principle that a bankruptcy court's equitable powers cannot be
used to excuse compliance with clear and unambiguous statutory requirements." *In re Mitrano*, 409 B.R. 812, 817
(E.D.Va.2009) (collecting cases). However, even among courts adopting this mandatory-dismissal approach, several
have left undecided the question whether the Bankruptcy Court retains some discretion in "extraordinary
circumstances." *See, e.g., In re Borges*, 440 B.R. at 556 n. 6 (concluding that § 109(h) mandates dismissal for
noncompliance, "[o]ther than, perhaps, finding manifest injustice in the particular circumstances of the case"); *In re
Mitrano*, 409 B.R. at 818 n. 4 ("This case does not require this Court to decide the broader question whether such
equitable doctrines may be invoked in 'extraordinary cases' to excuse noncompliance with Section 109(h) under the
doctrine of 'manifest injustice.' ").

This leads to the view that the court should analyze its discretionary power to dismiss a chapter

seven case by evaluation the terms of 11 USCA Sec 707, "since 707 is the exclusive statutory

mechanism for dismissing chapter 7 cases." *Hess*, p. 496.  This leads the Hess court to

conclude:

> The operative statute, § 707(a), provides that a court may dismiss a case only after notice and a
> hearing, and only for cause. "By its use of the word 'may,' § 707(a) imposes no mandate for the
> dismissal of any case, but reserves such outcome to the sound discretion of the court in those
> instances where cause is demonstrated."

Once the statutory construction exercise is complete it is simple enough for the court in Hess

to spell out its 'totality of the circumstances' approach to waiver in connection with the credit

counseling requirements of Section 109(h). [2]  Five years later the *Fiorillo* court is able to assert:

> A developing approach has held that the Bankruptcy Court retains some discretion after BAPCPA
> to waive the credit-counseling requirement in limited circumstances or to find "substantial
> compliance" sufficient to satisfy § 109(h).10 This approach generally relies on the reasoning of
> either In re Manalad, 360 B.R. 288 (Bankr.C.D.Cal.2007), or In re Hess, 347 B.R. 489
> (Bankr.D.Vt.2006).
>
> The decision of whether to grant or deny a motion to dismiss a petition in bankruptcy lies within the
> discretion of the bankruptcy judge. In re Sherman, 441 F.3d 794, 813 (9th Cir.2006), In re Zick, 931
> F.2d 1124, 1126 (6th Cir.1991), In re Atlas Supply Corp., 857 F.2d 1061, 1063 (5th Cir.1988), In
> re Marra, 179 B.R. 782, 785 (M.D.Pa.1995).
>
> The bankruptcy court must balance the equities and consider the benefits and prejudice of dismissal.
> In re Blue, 4 B.R. 580, 584 (Bankr.Md.1980). See also In re Brown, 88 B.R. 280, 284
> (Bankr.D.Hawai'i 1988). The court must make its determination by examination of the facts and
> *497 circumstances presented, on a case by case basis. In re Owens, 155 Fed.Appx.42, 45 (2d
> Cir.2005); In re Padilla, 222 F.3d 1184, 1191 (9th Cir.2000). The burden for establishing cause is
> on the moving party, In re Simmons, 200 F.3d 738, 743 (11th Cir.2000), and that party must meet
> their burden by a preponderance of the evidence, In re Horan, 304 B.R. 42, 48 (Bankr.Conn.2004)

---

[2] [9] [10] When exercising its discretion in connection with a motion under § 707, a court must consider the totality of circumstances. *Kornfield v. Schwartz*, 164 F.3d 778, 781 (2d Cir.1999). A totality of circumstances analysis, by definition, is subjective and varies from case to case. Certain criteria, however, seem essential when determining whether a case filed by debtor who did not establish all the criteria of § 109(h) should be dismissed under § 707(a). In this Court's judgment, the list of essential elements would include (1) whether the debtor filed the case in good faith, (2) whether the debtor took all reasonable steps to comply with the statutory requirements, (3) whether the debtor's failure to comply was the result of circumstances that were both extraordinary and beyond the control of the debtor, (4) whether the debtor's conduct meets the minimum requirements of § 109(h), (5) whether any party would be prejudiced by allowing the case to proceed, and (6) whether there are any unique equitable factors that tip the balance in one direction or the other.

## Application to Attorney / Office Mistakes

The *Hess* decision is a consolidation of two cases: Hess and Madore. In the case of debtor

Madore, her attorney, Ms. Stone, prepared all the papers necessary for the filing of her client's

bankruptcy and placed them in a "priority mail envelope".   Attorney Stone was not ready to

file the petition, however, since she was still waiting on the debtor to produce a certificate of

credit counseling.   While attorney Stone was out of the office with a medical condition,

however, an employee transmitted the envelope, thinking it was ready to file.   The client

requested counseling and obtained certification four days after the petition was filed.   The Hess

court applied discretion in the context of evaluating application for a 109(h) (3) extension

exemption concluding in respect of  (3) (A) (i)  that attorney office misadventures reasonably

may be considered exigent circumstances with respect to the debtor, but, however, that the

debtor in fact failed to comply with the terms of (3) (A) (ii).   Nonetheless, the Hess court

determined that failure to comply with (3) (A) (ii) was linked to the misadventure in her

attorney's office and that therefore dismissal "would constitute manifest injustice." Generally,

in regard to attorney error the *Hess* court in considering Madore points out:

> Generally if a debtor suffers adverse legal consequences as a result of an attorney error, the debtor's
> recourse is against the attorney, however, there are exceptions to that rule for law office failure, see
> In re Pioneer, 507 U.S. 380, 389–90, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (finding attorney's
> inadvertent failure to file proof of claim within court's deadline constitutes "excusable neglect"),
> and for an attorney's dire medical conditions, see Thomas v. Murkerson, 2005 WL 3591958
> (M.D.Ga. December 30, 2005)

In *In re Manalad* (United States Bankruptcy Court, C.D. California. | January 25, 2007 | 360

B.R. 288 | 2007 WL 247181) the court applied the type of statutory analysis discussed above

to find discretion to avoid dismissal in a bankruptcy case3 where failure to comply with credit

counseling requirements was due to attorney error.4

> [4] First, Debtor has a reasonable explanation. … the advice of Debtor's Counsel was erroneous, nevertheless Debtor is entitled to rely on his attorney's advice. … It would be a harsh result if Debtor suffered a dismissal with all the negative consequences that flow from that because Debtor consistently followed the advice of his counsel.

> Thus, because the consequences of dismissal are so significant, Congress would *308 have mandated dismissal as a remedy for non-compliance with the Credit Counseling Requirements as it did in other situations if it intended dismissal to be the only available remedy.

In *In re Henderson* (United States Bankruptcy Court, N.D. Texas, Dallas Division. | March 27,

2007 | 364 B.R. 906 | 2007 WL 926384) the court waived credit counseling compliance where

the debtors obtained their credit counseling certification one day after their attorney filed the

petition. In this instance the Hendersons had met with their attorney on a Saturday and agreed

they would obtain credit counseling prior to filing the petition on Monday. However,

> "the Hendersons' lawyer filed the petition on Monday, February 5, 2007, believing that the Hendersons had followed the prescribed game plan and had taken the credit counseling as planned over the weekend.

---

[3] There is a completely separate statutory basis for concluding that a lack of eligibility does not mandate dismissal. Nowhere in Title 11 is there a provision setting forth the remedy for failure to comply with the Credit Counseling Requirements, while the remedy of dismissal is specifically provided for in other situations.

*296 [2] Section 521(i)(1) omits the credit counseling certificate and debt repayment plan from the mandatory dismissal remedy that is imposed when a debtor fails to file many of the other documents required in a bankruptcy case. Thus, I conclude that Congress intended that dismissal is not mandated when debtors do not comply with the Credit Counseling Requirements.

297 I conclude that Congress, by choosing not to mandate dismissal as the consequence for failing to comply with the Credit Counseling Requirements, gave the courts discretion to fashion a remedy that is appropriate under the circumstances of each case.

[4] 292 Upon advice of Debtor's Counsel, Debtor believed that the Credit Counseling Requirements did not apply to his bankruptcy case because his debts were not consumer debts. Therefore, Debtor asserts that he should be excused from complying with the Credit Counseling Requirements and be allowed to confirm and consummate his Plan.

Under the version of Rules 1007(b)(3) and 1007(c) in effect on the Petition Date, the time for filing these documents was with the Petition,[14] or within a court approved extended period.[15] Debtor filed his certificate tardily … 239 days after filing his Petition.[16] 293

Among the findings and factors cited by the court in reaching its determination not to dismiss due to failure to comply with the exact terms of the credit counseling requirements were a determination the Hendersons "fell substantially within the parameters of Section 109(h)(3)(A)" and that "there had been a lack of communication between the Debtors and their attorney as of the time of the filing of the voluntary petition as to whether the Debtors had completed their credit counseling prepetition". In other words substantial compliance involving miscommunication with a representing attorney may allow invocation of totality of the circumstances equitable discretion by the court.

In *In re Enloe* (United States Bankruptcy Court, D. Colorado. | August 23, 2007 | 373 B.R. 123 | 2007 WL 2543727) the debtors completed one credit counseling too early before the filing of the petition and another after the filing of the petition. This failure of compliance was determined by the court to be the fault of the attorney involved. In the words of the court:

> The question here is what should or must a Court do when a debtor has not complied with the technical requirements and *128 has presented no statutory exception or exemption. [Moreover] In this case, the Debtors have not alleged any of the limited exceptions. Even more notable, counsel has offered no explanation as to why he missed the fact that the credit counseling was obtained over 180 days before the filing of the case and filed a deficient case. 128

In applying the third and sixth factors of the Hess totality of the circumstances test the court notes:

> Third, this Court believes that Debtors' failure to comply with the technical requirements of 11 U.S.C. § 109(h) were the result of an attorney's oversight. Admittedly, attorney oversight is generally not considered an extraordinary circumstance. *134 However, the error here is a failure to comply with a legal technicality, largely beyond the control or knowledge of the Debtors. Debtors employed bankruptcy counsel and relied on counsel to navigate them through the intricacies and technicalities of BAPCPA. The fault here lies with counsel for the Debtors, not the Debtors themselves, in failing to comply with the requirements of 11 U.S.C. § 109(h).

> Sixth, there are equitable factors that tip the balance in favor of not dismissing this case. The consequence of dismissing this case, when it is largely the fault of counsel, is an unfair result.

Finally, the court gives vent in a point of dicta:

> *127 Although certainly not controlling, it is instructive and gives context to this issue to note the developing consensus, since the inception of BAPCPA, that the credit counseling requirement is largely a procedural hurdle without value or consequence.13
> [n 13] See David Gray Carlson, Means Testing: The Failed Bankruptcy Revolution of 2005, 15 Am.Bankr.Inst.L.Rev. 223, 230 (Spring 2007) and Jeffrey A, Deller & Micholas E. Meriwether, Putting Order to the Madness, BAPCPA and the Contours of the New Prebankruptcy Credit Counseling Requirements, 16 J.Bankr.L. & Prac. 101, 104–106 (Feb.2007),

Finally, in *In re John* (United States Bankruptcy Court, M.D. Pennsylvania. | June 4, 2012 | 479 B.R. 643 | 2012 WL 1998405) the Trustee sought to dismiss with respect to an otherwise successfully completed Chapter 13 plan by raising an overlooked motion made by several years prior to dismiss for failure to timely comply with credit counseling requirement. Arguably, failure to resolve the motion raised much earlier by the Trustee was an office failure, either by the representing bankruptcy attorney, the Trustee or the court.

Compliance with the credit counseling requirement ultimately turned on whether one is to count backward 180 days from date credit counseling received or forward from date on which received. The Trustee argument that the former applied made submission 1 day outside the 180 prior to filing date deadline. The Court adopted trustee's approach to calculating timing, but applied discretion to dismiss Trustee's motion. And while in its reasoning to reach an equitable application of discretion to the circumstances involved, the court notes in passing the applicable developing doctrines rooted in *Hess et al.*[5], it nobly reaches for equitable simplicity:

---

[5] So here, on the threshold of closing a successful Chapter 13 case, the Debtors may, to their utter disappointment, find themselves losing their discharge. I note the Code does not require, in express language, an automatic dismissal of the case when the debtor does not comply with § 109(h) such as referenced in § 521(i) (1). "The Code's silence regarding the consequence for failing to comply with the prepetition credit counseling requirement contrast with other sections in the bankruptcy code that expressly provide for permissive, automatic, or mandated dismissal of an individual debtor's bankruptcy case." *In re Crawford,* 420 B.R. at 837. The *In re Fiorillo* case, *supra,* addresses what it calls the "developing approach" of bankruptcy courts retaining discretion to waive credit counseling requirements in limited circumstances or to find "substantial compliance sufficient to satisfy § 109(h)." See *In re Fiorillo,* 455 B.R. at 306. In that regard, the *Fiorillo* Court discusses the approaches taken by several courts such as *In re Manalad,* 360

For purposes of this case alone, I do not intend to adopt any of the approaches that In re Fiorillo outlines. ***As such, proceedings in bankruptcy court are inherently proceedings in equity. Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). I find it sufficient to utilize my authority under § 105 to excuse the technical non-compliance with § 109(h). At no time was the Debtors' good faith questioned in this case, and I simply cannot find that any party will be prejudiced by allowing this case to proceed to its logical conclusion.*** [Bold, italics, underline mine]. Therefore, based upon the foregoing, I will not dismiss the underlying case. I direct the Clerk to enter a Discharge and close the underlying case.

## Conclusion

The bankruptcy court has power to apply discretion to its consideration of what amounts to an attorney error in this case to obviate an unwarranted dismissal.  There is no reason or other principle of comity for the court to apply greater weight to a district court decision that happens to be in in the 4th Circuit, when no appellate ruling has been made.  Other district courts should be considered of equal weight.

But for attorney error Ms. Stinnie's bankruptcy would be, in effect, completed now.  She has in good faith completed two credit counseling requirements.  If present, she would testify that she is trying to replace her car and move to a new rental location.   Both efforts are being forestalled by lack of a bankruptcy discharge.

---

B.R. 288 (Bkrtcy.C.D.Ca.2007), which uses a three-part analysis to determine whether a deficiency under § 109(h) has been cured and *In re Hess,* 347 B.R. 489 (Bkrtcy.D.Vt.2006), which applies a totality of the circumstances test to determine whether dismissal was appropriate.

What the court does is to conduct justice. To determine that her case should be dismissed at this juncture is to put technical form over sensible substance in order to render a manifest injustice to the debtor.

**\*127** Although certainly not controlling, it is instructive and gives context to this issue to note the developing consensus, since the inception of BAPCPA, that the credit counseling requirement is largely a procedural hurdle without value or consequence.[12]

### 6. Manifest Injustice

**Manifest Injustice**

**Consequences of Dismissal:** Debtors who file for bankruptcy under BAPCPA without complying with the Credit Counseling Requirements face the harsh consequences visited upon a debtor who must file another bankruptcy case if the prior bankruptcy is dismissed for not strictly adhering to the Credit Counseling Requirements. For a debtor in financial straits, this means the expense of another filing fee ($299.00) and the time, effort, and possible attorneys' fees needed to prepare a new petition and set of case commencement documents. It also means a potential limited availability of the protection of the automatic stay. Under § 362(c)(3), when a debtor files a petition after a petition was pending within the preceding year, the debtor may lose the protection of § 362(a) thirty days after filing the later petition with respect to secured creditors and lessors.[73] A debtor has an opportunity to obtain an order continuing the automatic stay but must promptly file a motion, schedule a hearing,[74] and overcome a presumption that the later case was not filed in good faith.[75] For debtors who had one case dismissed, then a second case dismissed for failure to comply with the Credit Counseling Requirements, they must wait a full year to file another petition if they wish for any protection of the automatic stay.[76]

Thus, because the consequences of dismissal are so significant, Congress would **\*308** have mandated dismissal as a remedy for non-compliance with the Credit Counseling Requirements as it did in other situations if it intended dismissal to be the only available remedy.

/s/ Richard C. Devor, Jr.

Counsel for Debtor #74824

Central Virginia Legal Aid Society, Inc.
101 West Broad St., Suite 101
P.O. Box 12206
Richmond, VA 23241

804-200-6042
richard@cvlas.org